**Leroy CALLAHAN, Plaintiff-Appellant,**

v.

**H. M. PRICE, etc., et al., Defendants-Appellees.**

**No. 74–1029.**

United States Court of Appeals,
Fifth Circuit.

Dec. 13, 1974.

Fred L. Banks, Jr., Jackson, Miss., for plaintiff-appellant.

Wm. B. Compton, Meridian, Miss., Harold W. Davidson, Carthage, Miss., for defendants-appellees.

Before COLEMAN, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Leroy Callahan, a white, nontenured school principal in Leake County, Mississippi, after three one-year contracts as principal and seven one-year contracts as assistant principal, was not reemployed for the school year 1973–74. He asserts that the nonrenewal of his contract is violative of his First and Fourteenth Amendment rights to freedom of speech and association and to his right to be free from arbitrary and capricious governmental action. He first claims that the community opposition which triggered the refusal of the Board to re-hire him was grounded on his unpopular enforcement of court-ordered desegregation. He then asserts that in any event, community opposition alone, whatever its basis, is an insufficient ground for nonrenewal of his contract absent a showing that the school or his performance as principal is undermined. Finally he argues that nonrenewal under these circumstances makes the governmental action arbitrary and capricious, and otherwise violates his constitutional rights.

We affirm the district court's decision, not by deciding the serious legal questions posed by Callahan, but on the ground that the findings of the district court are not clearly erroneous and the facts do not support Callahan's claim that he was dismissed for constitutionally impermissible reasons. The key to any possible relief claimed by plaintiff lies in the reason for the community opposition to him and its effect. In a case of this kind, the burden of proof is on the plaintiff to show that the conduct of the school authorities was unconstitutional.

The facts found by both the school board after extensive hearings, and the district court after evidentiary hearings and examination of the transcript before the school board, show that the plaintiff failed to prove that the community opposition was based on his enforcement of court-ordered desegregation. The record also shows that he failed to prove that the Board was wrong in finding that his nonrenewal was in the best interests of the school and the students.

Callahan brought this action against the Superintendent of Education and the members of the Board of Education of Leake County, Mississippi, pursuant to 42 U.S.C.A. § 1983 and § 2000d and the First and Fourteenth Amendments. He sought injunctive and other relief requiring the defendants to rehire him, to reimburse him all back pay, and to pay him actual and punitive damages.

Throughout the course of this litigation Callahan has argued that his dismissal was based on his stand in favor

of compliance with a federal court order requiring integration of Leake County schools. The Superintendent and the Board take the position that the best interests of the school necessitated that Callahan not be rehired because of community opposition, which resulted primarily from his attempt to remove a popular football coach. This differing interpretation of the underlying reason for the failure to rehire Callahan makes it necessary for us to develop the factual background of this case in detail.

The Edinburg Attendance Center was one of the last schools in Leake County to experience integration, finally admitting its first black student in January 1970 after the ruling of this Court in United States v. Hinds County School Board, 417 F.2d 852 (5th Cir. 1969), cert. denied, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 531 (1970). From the beginning there was difficulty between the white students and the newly arrived black faculty members, described by witnesses as attempts on the part of the white students to "run-off" the black teachers. At the time the school was first integrated Callahan served as an assistant principal, a position which he had occupied for seven years. With the beginning of the 1970–71 school term, Callahan became principal of the Edinburg Attendance Center under the first of three successive one-year written contracts.

According to Callahan, it was at this time that he decided to "back his black teachers" and to comply with both the letter and spirit of the court order unitizing the Leake County school system. He set about to assure equal participation in all of the school's activities by placing blacks on the cheerleader squad in representative numbers, by allowing blacks to participate fully in homecoming and fund raising activities, and by placing blacks on the local board of trustees. These actions incurred the wrath of several of the white patrons of the school. Callahan was referred to in derogatory terms, signs were painted along the route he traveled to his farm each day, and, on occasions, threats were passed along to him and to his friends and supporters.

In spite of this opposition to Callahan he was reemployed for the 1971–72 school term. During this year Callahan's unpopularity was exacerbated by his failure to recommend certain teachers for reemployment for the 1972–73 term, particularly a popular football coach and assistant principal, John McCloud. Under the provisions of Section 37–9–17 of the Mississippi Code of 1972, the attendance center principal is given discretion and responsibility to initiate recommendations for teaching personnel within his attendance center. Callahan had accused McCloud of pilfering $5.19 from the school activity fund. McCloud was very popular with the students and in the community. In response to Callahan's action, petitions began to circulate and meetings were held in support of the football coach. Certain students at Edinburg Attendance Center threatened and attempted a walk-out in support of the football coach, but were persuaded to return to their classrooms by McCloud.

McCloud and several of the other teachers not recommended for reemployment requested a hearing before the Board of Education upon the charges asserted against them by Callahan. This request was granted and the Board resolved the charges in favor of the teachers. Both Callahan and McCloud were then requested to appear before the Board which expressed to both its concern that, in view of the circumstances then apparent, it would not be in the best interest of Edinburg Attendance Center for either of them to remain. Neither Callahan nor McCloud chose to resign and the Board subsequently entered into one-year written contracts for the 1972–73 school term with each of them. Thus the 1972–73 school term began at Edinburg Attendance Center with Callahan serving as principal and with McCloud serving as a teacher, instead of assistant principal.

During the fall of 1972, Superintendent Price became aware that this under-

current of discontent in the Edinburg Attendance Center was increasing. Petitions advocating Callahan's removal were circulated and, on occasion, Price and members of the Board had to go to the school in efforts to calm the student body and faculty.

Superintendent Price determined that there was in fact substantial opposition to Callahan and that it would not be in the best interest of the school to recommend Callahan as attendance center principal for the 1973–74 school term. Section 37–9–15 of the Mississippi Code of 1972 gives the Superintendent discretion and responsibility to initiate recommendations for the employment of attendance center principals. Price wrote Callahan a letter on January 18, 1973, advising him that he would not be recommended and giving the reasons for his decision:

> As you know, I am greatly concerned about the educational system of Leake County, including Edinburg Center, it's staff, pupils and patrons.
>
> I have given the situation that exists there very much thought and consideration, and have decided that it is for the best interest of the school and the children that I should not recommend you to the Leake County School Board for re-employment as Principal, after your present contract expires, for the 1973–74 school term.
>
> My reason for not recommending you is that under the conditions that exist at the Edinburg Center, tensions are so high among patrons, teachers and students, that you cannot have the type of school and education that the pupils of the community are entitled to and deserve.
>
> This decision was made entirely for the best interest of the school and for no other reasons.

Callahan then brought this suit in April 1973 at a time when he was still serving as attendance center principal at Edinburg. The defendants immediately obtained from the district court a stay for the purpose of conducting a board hearing. The Board thereupon gave Callahan a full hearing as to the reasons for the nonrenewal of his contract. He was given a statement of the reason for the Superintendent's action, the names and nature of the expected testimony of the witnesses to be called by the Superintendent, and an opportunity to cross-examine[6] the Superintendent's witnesses and to present evidence of his own. It is not questioned that this hearing afforded Callahan all of the procedural due process contemplated by the Fourteenth Amendment. Ferguson v. Thomas, 430 F.2d 852, 856 (5th Cir. 1970); cf. Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961).

The Board then filed its findings and conclusions with the district court. The Board was explicit in its findings as to why Callahan was not rehired for the 1973–74 school term:

> There was and is substantial opposition among the parents of children attending the Edinburg Attendance Center to the re-employment of Mr. Leroy Callahan as attendance center principal for the 1973–1974 scholastic year which begins July 1, 1973; and, that this substantial opposition to Mr. Leroy Callahan as attendance center principal is not in the best interests of the public school at Edinburg Attendance Center; and, that these are the two sole reasons why Mr. H. M. Price, as Leake County, Mississippi, Superintendent of Education, did not recommend Mr. Leroy Callahan to the Leake County, Mississippi, Board of Education for the position as attendance center principal at Edinburg Attendance Center for the 1973–1974 scholastic year. We find that there is very little, if any, racial hostility in the Edinburg school community directed toward Mr. Leroy Callahan; and, that this was not a factor in the decision of Mr. H. M. Price not to recommend Mr. Leroy Callahan as attendance center principal.
>
> We further find that the administration of Edinburg Attendance Center by Mr. Leroy Callahan on a fully

unitary non-discriminatory basis was not the reason for the substantial opposition to Mr. Callahan in the Edinburg Attendance Center community. Callahan was allowed to complete his contract which expired by its own terms on June 30, 1973.

■■ A school board hearing procedure which is conducted in accordance with the dictates of procedural due process is entitled to great weight. If substantial evidence appears to support the school board's action that should end the matter. The court should never substitute its judgment for that of the Board. Toups v. Authement, 496 F.2d 700 (5th Cir. 1974); Thompson v. Madison County Board of Education, 476 F.2d 676 (5th Cir. 1973). On this appeal, our review is limited to examining the record to ascertain whether there was substantial evidence to support the finding of the Board and the district court that the nonrenewal of Callahan's contract was due to substantial community opposition which was unrelated to his efforts to comply with court-ordered desegregation.

■ At the Board's hearing, Callahan had the burden of proving that he was not rehired for constitutionally impermissible reasons. Fluker v. Alabama State Board of Education, 441 F.2d 201 (5th Cir. 1971). He attempted to meet the burden by presenting evidence that the Superintendent's decision was based on community opposition resulting from Callahan's full faith compliance with federal court-ordered desegregation. The Superintendent countered with evidence showing that the decision not to rehire was grounded on community opposition resulting from Callahan's disagreements with football coach McCloud. The Board resolved this conflict in favor of the Superintendent, and like the district court, we agree that there was substantial evidence to support its findings.

In its report to the district court the Board noted that it had not

. . . attempted to analyze the testimony of each witness and find sepa-

rately findings of fact as to the testimony of each witness. There were numerous witnesses in this lengthy hearing and much of the testimony was contradictory in nature. This simply points up and emphasizes our finding that there is substantial opposition to Mr. Callahan in the Edinburg school community and that Mr. Callahan is the center of the controversy.

Likewise we do not feel it would be helpful, or that it is necessary, to pull from the record testimony supporting the Board's and district court's findings. We agree with plaintiff that there was some opposition to him which was racially motivated. Considering that the Edinburg Attendance Center was first integrated in 1970, this opposition was not surprising or unusual. There had been such opposition since Callahan became principal in 1970, yet this opposition did not prevent Superintendent Price from recommending that Callahan be reemployed in 1971 and in 1972. It was only after the McCloud controversy in the spring and fall of 1972 that Price decided the community opposition to Callahan was such that it would not be in the best interest of the school for Callahan to be reemployed for the 1973-74 school term. The record contains substantial evidence to support the findings that, despite such racially motivated opposition, Superintendent Price's decision not to reemploy Callahan was based on considerations and opposition unrelated to any efforts of the principal to comply with court-ordered desegregation.

■■ Plaintiff simply failed to satisfy his burden of proving that the community opposition and the Superintendent's decision not to reemploy him was due to his interest in maintaining an integrated school. On appeal, plaintiff contends that even if this be so, the Superintendent's decision was arbitrary and capricious and in violation of the Fourteenth Amendment absent a showing that his performance as principal of Edinburg Attendance Center was undermined as a result of the opposition. He

points to a good and improved school record during his principalship. Callahan argues that there was no showing that the opposition had any effect on his ability to run the school and therefore, defendants' decision that he not be re-hired was wholly unsubstantiated and ran afoul of his right to substantive due process. Unless plaintiff can show that the nonrenewal of his contract was for a constitutionally impermissible reason, however, there is no basis for us to invalidate the Superintendent's action. The finding by the Board that it was not in the best interest of the school to rehire Callahan removes from the decision the arbitrary and capricious characteristics asserted by plaintiff. We have continually reiterated the view that matters of school policy are best resolved in the local community and within the institutional framework of the school system. Ferguson v. Thomas, *supra*. The findings and conclusions of the district court are supported by substantial evidence and are not clearly erroneous under F.R.Civ.P. 52(a).

Affirmed.