Irma J. SMITH et al.

v.

**CONCORDIA PARISH SCHOOL
BOARD et al.**

**United States of America, Intervenor.**

**Civ. A. No. 11577.**

United States District Court,
W. D. Louisiana,
Monroe Division.

May 15, 1975.

See also D.C., 387 F.Supp. 887.

Stanley A. Halpin, Jr., New Orleans, La., for plaintiffs.

W. C. Falkenheiner, Dist. Atty., Seventh Judicial District, Vidalia, La., for defendants.

J. Stanley Pottinger, Asst. Atty. Gen., Edward D. Reibman, Atty., Ed. Section, Civ. Rights Div., U. S. Dept. of Justice, Washington, D. C., for the Government.

John F. Ward, Jr., Baton Rouge, La., for amici curiae Louisiana School Boards Ass'n.

John Dale Powers, Sanders, Miller, Downing & Kean, Baton Rouge, La., for Louisiana Teachers' Ass'n.

## MEMORANDUM RULING

DAWKINS, Senior District Judge.

On December 17, 1974, the above Board moved this Court to conduct an expedited hearing for the purpose of formulating and adopting *Singleton* [1]

---

1. *Singleton v. Jackson Municipal Sep. Sch. Dist.*, 419 F.2d 1211 (5th Cir., 1970) (*en banc*).

objective criteria (*Singleton* criteria) for use by that body in its official relations with principals, teachers, or other professional staff employed by the school system. We granted the motion, and a hearing was held on December 18, 1974. Upon completion of that hearing, we allowed counsel for the parties to file additional briefs, which now have been received.[2]

After careful consideration of the Fifth Circuit decisions governing this matter, and the proposals and contentions urged upon us by all counsel, we have determined that the *Singleton* criteria and rules for their administration set out in the Appendix hereto shall be adopted by the Board.

The criteria we require the Board to adopt substantially are similar to those recommended by plaintiffs and the Government. In our considered judgment, the Board and amici curiae LSBA and LTA do not strenuously object to such objective criteria.[3] Instead, the Board and amici curiae primarily express concern as to WHEN *Singleton* criteria must be applied. Since the parties disagree on this point,[4] we feel it incumbent upon us to state our understanding of the Fifth Circuit rule as to WHEN the Board must adopt and apply *Singleton* criteria before it may dismiss or demote any professional staff member.

Two factors must coincide in order to trigger mandatory application of the *Singleton* criteria. First, a school system under court order to desegregate must be in a *"Singleton* situation"; which is to say, the system must be in the process of desegregating. A *"Singleton* situation" exists until a unitary system has been established *and* has been operated as such for a minimum of "several years." Lemon v. Bossier Parish School Board, 444 F.2d 1400 (5th Cir., 1971); Pickens v. Okolona Municipal Sep. Sch. Dist., 380 F.Supp. 1036 (N.D.Miss., 1974); Keglar v. East Tallahatchie Sch. Dist., 378 F.Supp. 1269 (N.D.Miss., 1974).

Next, there must be a necessary reduction in the number of professional staff employed by the school system directly or indirectly related to the process of desegregation—*i. e.*, a reduction caused by the establishment and operation of a unitary school system. Consequently, where court ordered desegregation necessitates a reduction in numbers of the professional staff, dismissals and demotions must be made solely in accordance with previously adopted *Singleton* standards and not by subjective evalutions of a ". . . teacher's lack of professional credentials, his poor performance in the classroom, his failure to abide by school regulations, his lack of cooperation, or other similar explanations."[5]

---

2. In addition to those of the School Board and plaintiff, briefs were received from counsel for Intervenor, United States of America (Government) and amici curiae, Louisiana School Boards Association (LSBA) and Louisiana Teachers' Association (LTA).

3. In fact, in his brief, counsel for LSBA indicated that they would be acceptable.

4. Plaintiffs, in their most recent brief, urge that *Singleton* criteria must be applied whenever there is to be a dismissal or demotion of professional faculty and staff due to "re-duction in force," "alleged incompetence," "willful neglect of duty," and "alleged dishonesty which does not fall below the minimum standards of decency as defined in Thompson v. Madison County Board of Education." (See plaintiffs' brief of January 20, 1975.) The positions taken by the other parties to this action, although not always clear, conflict with plaintiffs' position in some or all respects.

5. Thompson v. Madison County Board of Education, 476 F.2d 676, 678 (5th Cir., 1973).

■ Notwithstanding, no preestablished objective criteria ever are needed to dismiss a staff member who is guilty of conduct "repulsive to the minimum standards of decency—such as honesty and integrity—required by virtually all employers of their employees, and especially required of public servants, such as school teachers." *Thompson, supra,* at p. 679.

■ In summary, the strict requirements of *Singleton* apply when (1) a school system still is in a *"Singleton* situation," *i. e.,* it is still in the process of desegregating (because it has not operated a unitary system for a minimum of "several years") *and* (2) dismissals or demotions in professional staff are required pursuant to a reduction in force caused by that process. Where a court determines, however, that a *"Singleton* situation" no longer exists, *or* where there is no desegregation related reduction in a school system's professional staff, *Singleton* does not apply. Then ". . . nothing exists . . . to condition the discretionary right of local school authorities . . . to supervise the conduct of their [professional staff] and refuse to renew their contracts." McLaurin v. Columbia Municipal Sep. Sch. Dist., 478 F.2d 348, 356 (5th Cir., 1973) (Dyer, J., dissenting); Callahan v. Price, 505 F.2d 83 (5th Cir., 1974). Where *Singleton* does not apply, a school board's supervisory power over its principals, teachers, and other professional staff generally is restricted only by constitutional due process,[6] state law, and contractual obligations. If we were to hold otherwise,

school policy, insofar as it relates to personnel administration, would continue to be formulated by federal courts even though ". . . matters of school policy are best resolved in the local community and within the institutional framework of the school system." *Callahan, supra,* at p. 88; Ferguson v. Thomas, 430 F.2d 852 (5th Cir., 1970).

Therefore, it hereby is ordered that the Board adopt the objective criteria contained in the Appendix to this ruling and use them in accordance with our expressions contained herein.

## APPENDIX

## OBJECTIVE CRITERIA TO BE USED FOR DEMOTIONS OR DISMISSALS IN A *SINGLETON* SITUATION

If, as a result of court-ordered desegregation or conversion to a unitary school system, there is to be a reduction in the number of principals, teachers, or other professional staff employed by a school system which will result in dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected from among all the staff in the school system holding positions in the particular teaching or administrative area in which a reduction is required.

In determining which staff member will be dismissed or demoted, all staff members in the affected area shall be evaluated by the following standards of professional preparation and experience

---

6. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). We note that the parties here have proposed various *procedures* for safeguarding the due process rights of professional staff. LSBA and LTA express great concern as to the effect of such proposed procedures on the Louisiana Teacher

Tenure Law, La.R.S. 17:441 et seq. The sole purpose of the expedited hearing here was to establish objective criteria, not to set up detailed procedures for dismissals and demotions unrelated to the desegregation process. Therefore, we do not rule upon, nor do we intimate any view as to whether such procedures would be acceptable.

and placed in numerical order, as determined by the points each has earned:

POINTS

A. CERTIFICATION

| | |
|---|---|
| Non-certified—No degree | 0 |
| Certified—No degree | 5 |
| Certified, | |
| With bachelor's degree only | 20 |
| With master's degree or above | 30 |
| Certified in particular area in which a reduction in professional staff is required (e. g., Administration, Elementary Education, Special Education), | |
| With bachelor's degree only | 40 |
| With master's degree and above | 70 |

B. CREDIT HOURS

One point for each semester credit hour earned beyond highest degree held

C. EXPERIENCE *

| | |
|---|---|
| Teaching | 10 points for each year up to 20 years (maximum points—200) |
| Administration below level of principal | 10 points for each year up to 20 years (maximum points—200) |
| Administration at principal level | 15 points for each year up to 20 years (maximum points—200) |

In all cases, the staff member who has earned the minimum total score based upon ratings on professional preparation and experience shall be the one to be dismissed or demoted. In the event this method results in two or more persons holding the same minimum score, the staff member with the minimum score under Part C (Experience) shall be the one to be dismissed or demoted. If there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed

or demoted, until each displaced staff member who is qualified has had opportunity to fill the vacancy and has failed to accept an offer to do so.

---

* Where reduction in professional staff is required, the Board shall use only those years of experience *directly* related to the area in which reduction is required. For example, where a reduction in teaching staff is required, use only experience as a teacher; but where the reduction is in the administrative area, use only administrative experience. However, when a staff member is dismissed from a position in an administrative area, his experience in teaching shall be considered to ascertain whether he should be retained as a teacher and *vice versa*.