John D. GRIFFIN

v.

**J. O. LANCASTER, Individually and as Superintendent of Ouachita Parish School District, et al.**

Civ. A. No. 16458.

United States District Court,
W. D. Louisiana,
Monroe Division.

Sept. 18, 1975.

Larry Watts, University Medical Center, Houston, Tex., Benjamin E. Smith, Smith & Scheuermann, New Orleans, La., for plaintiff.

J. Carl Parkerson, Gilbert T. Brown Jr., Michael S. Ingram and James A. Norris, Monroe, La., for defendants.

## OPINION

STAGG, District Judge.

In this action plaintiff, John Densey Griffin, is seeking declaratory and injunctive relief as well as back pay to redress an alleged deprivation of his constitutional rights which occurred when the Ouachita Parish School Board refused to renew his teaching contract for the 1970–71 school year. Plaintiff, a black, contends that his nonretention was solely on account of his race, in violation of 42 U.S.C. Sections 1983 and 1985, and that the manner in which his employment was terminated violated the due process clause of the Fourteenth Amendment to the United States Constitution as well as decisions of the Fifth Circuit Court of Appeals.

Made defendants herein are J. O. Lancaster, individually and in his official capacity as Superintendent of the Ouachita Parish School District; Hoyt Lee, individually and in his official capacity as Principal of West Monroe High School; the individual members of the Ouachita Parish School Board in their individual and official capacities; and the Ouachita Parish School District, a political subdivision of the State of Louisiana.

1.  See plaintiff's exhibit "F", appended hereto.

Jurisdiction of this court over the matter in controversy arises by virtue of 28 U.S.C. Sections 1343, 2201 and 2202.

## FINDINGS OF FACT

In May, 1968, Griffin was employed by the Ouachita Parish School Board to teach social studies at Richardson High School, an all-black facility, for the 1968–69 school year. Toward the end of that school year and pursuant to court-ordered integration necessitating the transfer of teaching personnel, plaintiff volunteered to be transferred from Richardson to West Monroe High School, formerly an all-white or predominately white facility. During the 1969–70 school year plaintiff taught geography at West Monroe High School.

On May 28, 1970 Griffin was informed by officials of the Ouachita Parish School District that his contract of employment would not be renewed for the 1970–71 school year because his probationary term as a teacher had been unsatisfactory.[1]

The testimony of plaintiff's supervisors, former students, fellow teachers and others established that Griffin could not handle the classroom situation, in that he was unable to maintain discipline over his students. The evidence to this effect was overwhelming.

## CONCLUSIONS OF LAW

▮ Aside from the bare allegations of plaintiff, the record is void of any evidence that his nonretention was due to racial considerations. Even the statistics discount racial discrimination in the hiring or firing of teachers in the Ouachita Parish school system for the years in question.[2]

From the totality of the evidence adduced, it is apparent that the sole cause of the nonrenewal of plaintiff's contract was his incompetency as a teacher, and that his race had nothing whatsoever to do with his nonretention.

2.  See plaintiff's exhibits "A–1", "B–1" and "C–1", appended hereto.

In addition to alleging that he was discriminated against because of his race, Griffin contends:

(A) That he possessed a property interest in his continued employment by the Ouachita Parish School Board and a liberty interest in his professional and personal reputation which entitled him to a due process hearing prior to the school board's refusal to renew his contract; and

(B) That his dismissal was not accomplished through the use of valid objective, nonracial criteria required by the Fifth Circuit decisions in *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (1969) and *Thompson v. Madison County Board of Education*, 476 F.2d 676 (1973).

## A. PROCEDURAL DUE PROCESS CLAIMS

Although plaintiff readily admits that he is a nontenured teacher and thus is not entitled to a due process hearing because of tenure, he contends that the charge of incompetency which formed the basis of his nonretention imposed upon him a stigma which badly damaged his reputation and standing in the community in which he resides. This, he contends, entitles him to a hearing where he may offer evidence to refute the charges against him and thereby clear his name.

After a careful study of the testimony and evidence in this case, this Court cannot conclude that Mr. Griffin's character and reputation were maligned by the school board's action to such an extent as to entitle him to a hearing and thus that a "liberty" right that he possessed was infringed.

The facts in the instant case are similar to those previously before this Court in the case of *LaBorde v. Franklin Parish School Board*, C.A.No. 19,262 (W.D.La., September 30, 1974) which was affirmed by the Fifth Circuit at 510 F.2d 590 (1975). In the *LaBorde* case the Circuit Court stated:

"The underlying and uncontroverted facts disclose that the school board did not make any charge against Mrs. LaBorde of a nature calculated to damage her standing or reputation in the community. No 'liberty' right she possessed was infringed. She was not charged with dishonesty or immorality, nor did the school board impose on her any stigma or disability that foreclosed her freedom to take advantage of other employment opportunities. She was a probationary teacher, and the reasons which the school board gave her for terminating her contract were no more than the reflection of dissatisfaction with her teaching methods and classroom conduct. None of the charges were made public by school officials. The brief mention in the local paper that her contract had not been renewed did not impugn Mrs. LaBorde's good name, honor or integrity. Under *Roth's* standards (*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)) her 'liberty' claim was properly denied." 510 F. 2d 590, 593.

The reasons for Griffin's discharge were, of course, obvious to school personnel and students; however, the school board in no way publicized plaintiff's shortcomings in the classroom to the general public. Finally, the reasons for Griffin's nonretention do not suggest that he was guilty of dishonesty or immorality. Under these circumstances there was no deprivation of Griffin's liberty interest in his professional or personal reputation. Also, it is now well established that the "mere fact that nonretention by a school system might make a teacher less attractive to other school systems does not constitute deprivation of liberty so as to entitle the teacher to a pretermination hearing." *Kelly v. West Baton Rouge Parish School Board*, C.A. 5th Cir., 517 F.2d

194 (1975). See also *Robinson v. Jefferson County Board of Education,* 485 F.2d 1381 (5th Cir. 1973).

Plaintiff also contends that he was entitled to a due process hearing as he had a valid expectation of reemployment since he was furnished with a preliminary staffing form [3] concerning employment for the ensuing year.

The testimony of Hoyt Lee, principal of West Monroe High School, established that it was the general policy in the Ouachita Parish school system to give to all teachers who were going to be offered a teaching position for the next school year a preliminary staffing form on which the teacher could record his employment intentions. This form customarily was distributed late in the school year and any teacher who did not receive a form would not expect to be reemployed by the school board for the subsequent school year. Although the testimony is not clear as to how the form was tendered, it was established that Griffin received and executed a preliminary staffing form for the 1970–71 school year. Thus, plaintiff claims he had a valid expectation of reemployment.

■ Notwithstanding his receipt of the staffing form, in light of other testimony produced at trial it is clear that plaintiff could not have had a valid expectation of reemployment for the 1970–71 school year. Mr. Lee testified on direct examination, and then again on cross-examination, that he had asked Griffin to either resign or be dismissed because of his inability to handle a classroom situation due to disciplinary problems. According to Lee this conference took place in the later part of April, 1970, which was prior to the distribution of the preliminary staffing forms. In addition, plaintiff admits that he was asked to resign both by Mr. Lee and by Superintendent Lancaster sometime around the middle of May,

1970. Further evidence revealed that Griffin refused to resign and instead executed the staffing form indicating that he desired to teach in the Ouachita Parish system for the upcoming year. These circumstances surrounding plaintiff's receipt and execution of the staffing form effectively rebut Griffin's contention that he had a valid expectation of reemployment for the 1970–71 school year.

Plaintiff's final ground on which he bases his right to a pretermination hearing is also without merit. He alleges that the Ouachita Parish School Board had adopted a policy of treating tenured and nontenured teachers alike and giving any teacher a due process hearing before he or she was discharged. The evidence does not sustain this allegation.

■ Although the school board had a policy of not arbitrarily discharging either probationary or tenured teachers, the evidence revealed that there was a distinction between tenured and nontenured teachers in that tenured teachers enjoyed a greater sense of job security. Concerning the board's policy of giving any discharged teacher a pretermination hearing, the Louisiana Teacher Tenure Law makes such a hearing mandatory for tenured teachers, whereas the policy of the Ouachita Parish School Board was to give nontenured teachers such hearings only on request.

This Court concludes that plaintiff was not deprived of procedural due process by the failure of the Ouachita Parish School Board to afford him a pretermination hearing.

## B. SINGLETON ISSUE

The second prong of plaintiff's attack on his dismissal concerns the failure of the school board to apply valid objective, nonracial criteria in making its decision not to renew his contract. Such a procedure, says plaintiff, is mandated by the

---

3. See plaintiff's exhibit "L–62", appended hereto.

Fifth Circuit opinions in *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (1969) and *Thompson v. Madison County Board of Education*, 476 F.2d 676 (1973). This Court finds that these decisions are not applicable to Griffin's nonretention.

In so deciding, this Court follows the well reasoned opinion of Judge Ben C. Dawkins Jr., in the case of *Smith v. Concordia Parish School Board*, 393 F. Supp. 1101 (W.D.La.1975). In that case, Judge Dawkins stated:

> "Two factors must coincide in order to trigger mandatory application of the *Singleton* criteria. First, a school system under court order to desegregate must be in a '*Singleton* situation'; which is to say, the system must be in the process of desegregating. A '*Singleton* situation' exists until a unitary system has been established *and* has been operated as such for a minimum of 'several years'. *Lemon v. Bossier Parish School Board*, 444 F.2d 1400 (5th Cir., 1971); *Pickens v. Okolona Municipal Sep. Sch. Dist.*, 380 F.Supp. 1036 (N. D.Miss., 1974); *Keglar v. East Tallahatchie Sch. Dist.*, 378 F.Supp. 1269 (N.D.Miss., 1974)."

> "Next, there must be a necessary reduction in the number of professional staff employed by the school system directly or indirectly related to the process of desegregation—i. e., a reduction caused by the establishment and operation of a unitary school system. * * *."

> "In summary, the strict requirements of *Singleton* apply when (1) a school system still is in a '*Singleton* situation,' i. e., it is still in the process of desegregating (because it has not operated a unitary system for a minimum of 'several years') *and* (2) dismissals or demotions in professional staff are required pursuant to a reduction in force caused by that process. Where a court determines, however, that a '*Singleton* situation' no longer exists, *or* where there is no desegregation related reduction in a school system's professional staff, *Singleton* does not apply. Then ' . . . nothing exists . . . to condition the discretionary right of local school authorities . . . to supervise the conduct of their [professional staff] and refuse to renew their contracts.' *McLauren v. Columbia Municipal Sep. Sch. Dist.*, 478 F.2d 348, 356 (5th Cir., 1973) (Dyer, J., dissenting); *Callahan v. Price*, 505 F.2d 83 (5th Cir., 1974). Where *Singleton* does not apply, a school board's supervisory power over its principals, teachers, and other professional staff generally is restricted only by constitutional due process, state law, and contractural obligations." (Footnote omitted.) 393 F.Supp. 1101, 1102–1103.

In the case *sub judice* there was no reduction or anticipated reduction in the number of teachers and staff employed by the Ouachita Parish School Board. Indeed, the record reflects that there was an *increase* in the number of both teachers and professional staff. Thus, *Singleton* criteria need not be applied to Griffin's nonretention, and this Court finds *no* procedural due process failure occurred, therefore, the discharge of Mr. Griffin was not constitutionally invalid.

## CONCLUSION

The demands of plaintiff, including the prayer for reasonable and necessary attorney's fees, are hereby rejected at his costs.

The foregoing shall constitute this Court's findings of fact and conclusions of law pursuant to Rule 52, Federal Rules of Civil Procedure. The defendants are hereby ordered to submit to the Court, within fifteen (15) days, a judgment, approved as to form by the plaintiff and consistent with the foregoing.

426

PLAINTIFF
Exh. No. E
Case 16458

# OUACHITA PARISH SCHOOL BOARD

### 100 BRY STREET

## Monroe, Louisiana 71201

May 28, 1970

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISI:...
FILED IN EVIDENCE

JAN 16 1975

ALTON L. CURTIS, CLER..
BY
DEPUTY

Mr. John D. Griffin
2104 Weaver Circle
Monroe, Louisiana 71201

Dear Mr. Griffin:

As in accordance with Revised Statutes 17:442 this is to inform you that your probationary term as a teacher for the Ouachita Parish School system has been unsatisfactory.

Therefore, you will not be re-employed as a teacher.

Sincerely,

J. O. Lancaster
Superintendent

JOL/mes

cc: Mr. Hoyt Lee, Principal
West Monroe High School

Filed in Evidence

Suit #........... ;      a

Deputy Clerk

FORM OS/CR 101-1
BUDGET BUREAU
NO.: 85-R0-108
EXPIRATION DATE
8/31/70

**REPORTING REQUIREMENT:**

This report is required pursuant to the HEW Regulation (45 CFR 80) issued to carry out the purposes of Title VI of the Civil Rights Act of 1964. Section 80.6(b) of the Regulation provides:

Compliance Reports. Each recipient shall keep such records and submit to the responsible Department official or his designee timely, complete and accurate compliance reports at such times, and in such form and containing such information as the responsible Department official or his designee may determine to be necessary to enable him to ascertain whether the recipient has complied or is complying with this Regulation.

**FALL, 1969 ELEMENTARY AND SECONDARY SCHOOL SURVEY**
Office for Civil Rights
Department of Health, Education & Welfare
P.O. Box 14195
Washington, D.C. 20044
Telephone: 202-338-7866
Due December 20, 1969
**SCHOOL SYSTEM SUMMARY REPORT**

Exh. No. A1

Case 16458

I. Name of School System __Ouachita Parish__

II. Street Address __100 Bry Street__

III. City __Monroe__ , County __Ouachita__ , State __Louisiana__ , Zip Code __71201__

IV. Name of Chief Administrative Officer of School System __J. O. Lancaster Jr.__

V. Number of Individual School Campus Report Forms Attached: __Thirty-three (33)__

VI. STUDENT ENROLLMENT IN THIS SYSTEM. Do not use percentages, average daily attendance, average daily membership, or year-end enrollment.

| FALL, 1969 | Col. 1 American Indian | Col. 2 Negro | Col. 3 Oriental | Col. 4 Spanish Surnamed American | Col. 5 All Individuals NOT Included in Cols. 1-4 | Col. 6 School System Totals |
|---|---|---|---|---|---|---|
| A. Total student enrollment in this system (sum of 102-1 forms Item VI.A.) | | 4,709 | | | 13,068 | 17,777 |
| B. Nonresident students enrolled in this system | | 0 | | | 0 | 0 |
| C. Resident students enrolled in this system | | 4,709 | | | 13,068 | 17,777 |

VII. RESIDENT STUDENTS NOT ENROLLED IN THIS SCHOOL SYSTEM.

| | Col. 1 | Col. 2 | Col. 3 | Col. 4 | Col. 5 | Col. 6 |
|---|---|---|---|---|---|---|
| A. Resident students enrolled in another Public School system (estimate) | | 5,100 | | | 5,900 | 11,000 |
| B. Resident students enrolled in nonpublic schools (estimate) | | 272 | | | 947 | 1,219 |
| C. Resident school age children not in school (estimate) | | 530 | | | 265 | 795 |

VIII. FULL-TIME PROFESSIONAL STAFF ONLY. Note: Professional includes principals, ass't principals, classroom teachers and those staff members who are supervisors of instruction, curriculum consultants, school librarians, non-classroom teachers (homebound, etc.), audio-visual staff, TV teachers, guidance counselors and school psychologists—assigned to this school system on a FULL-TIME BASIS. Do not use percentages, fractions, or full-time equivalents.

| FULL TIME ONLY | Col. 1 | Col. 2 | Col. 3 | Col. 4 | Col. 5 | Col. 6 |
|---|---|---|---|---|---|---|
| A. Total FULL-TIME Professional Staff assigned to ONE School Campus only (sum of Individual School Campus Report Forms, Item VIII.E.) | | 209 | | | 567 | 776 |
| B. Total FULL-TIME Professional Staff assigned to more than one School Campus | | 7 | | | 15 | 22 |
| C. Total of A. and B. above. | | 216 | | | 582 | 798 |
| IX. Total FULL-TIME Classroom Teachers assigned to ONE School Campus only (sum of Individual School Campus Report Forms Item VIII.A.) | | 190 | | | 513 | 703 |

X. OPTIONAL ITEM: PART-TIME PROFESSIONAL STAFF.

| Persons working less than full-time in this school system. | | 0 | | | 0 | 0 |
|---|---|---|---|---|---|---|

To assure the submission of correct Title VI compliance data, check the completeness and accuracy of each item reported. Errors or omissions may require a retiling of this form. Be sure there is an Individual School Report for each school campus reported in Item V.

Certification: I certify that the information given with this report is true and accurate to the best of my knowledge and belief. A willfully false statement is punishable by law. (U.S. Code, Title 18, Section 1001).

318 / 323-1391

Signature of Person Furnishing Information
**Superintendent**
Title

(Area Code) Telephone Number

Date Signed

U S DISTRICT COURT

Fall, 1969
BY Mary a Rainey
DEPUTY

Civil 16458

**DUPLICATE—FORWARD TO OR KEEP AT DISTRICT OFFICE**

FORM OS/CR-101-1
BUDGET BUREAU
NO.. 85-R0-108
EXPIRATION DATE:
8/31/71

**/PORTING REQUIREMENT:**

/his report is required pursuant to the HEW Regulation (45 CFR 80) issued to carry out the purposes of Title VI of the Civil Rights Act of 1964. Section 80.6(b) of the Regulation provides:

Compliance Reports. Each recipient shall keep such records and submit to the responsible Department official or his designee timely, complete and accurate compliance reports at such times, and in such form and containing such information as the responsible Department official or his designee may determine to be necessary to enable him to ascertain whether the recipient has complied or is complying with this Regulation.

**FALL 1970**
**ELEMENTARY AND SECONDARY SCHOOL CIVIL RIGHTS SURVEY**
Required Under Title VI of the Civil Rights Act of 1964
**U.S. DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE**
Office for Civil Rights
Washington, D.C.
Telephone: 202/338-7866

| SCHOOL SYSTEM SUMMARY REPORT |
| Due October 15, 1970 |

U. S. DISTRICT COURT

Exh. No. B-1
Case 16458

I. Name of School System ___Ouachita Parish School Board___

II. Street Address ___100 Bry Street___

III. City ___Monroe___ , County ___Ouachita___ , State ___Louisiana___ , Zip Code ___71201___

IV. Name of Chief Administrative Officer of School System ___James O. Lancaster, Superintendent___

V. Number of Individual School Campus Report forms attached: _____

| | Col. 1 American Indian | Col. 2 Negro | Col. 3 Oriental | Col. 4 Spanish Surnamed American | Col. 5 All Individuals NOT Included in Cols. 1-4 | Col. 6 Totals |
|---|---|---|---|---|---|---|
| **VI. PUPIL MEMBERSHIP IN THIS SYSTEM** | | | | | | |
| A. Sum of pupils reported on Individual School Campus Report forms, Item VI A. (Total pupil membership in this system) | 1 | 4514 | 2 | 4 | 12948 | 17469 |
| 1. Nonresident pupils in membership in this system | 0 | 0 | 0 | 0 | 0 | 0 |
| 2. Resident pupils in membership in this system | 1 | 4514 | 2 | 4 | 12948 | 17469 |
| **VII. RESIDENT SCHOOL AGE CHILDREN NOT ENROLLED IN THIS SCHOOL SYSTEM** | | | | | | |
| A. Resident pupils enrolled in another public school system (estimate) | 0 | 4459 | 0 | 0 | 5449 | 9908 |
| B. Resident pupils enrolled in non-public schools (estimate) | 0 | 224 | 0 | 0 | 1867 | 2091 |
| C. Resident school age children not in school (estimate) | 0 | 184 | 0 | 0 | 480 | 664 |

**VIII. FULL-TIME PROFESSIONAL INSTRUCTIONAL STAFF** (Working FULL-TIME at this school campus in an instructional capacity. Report the number; do not use percents, fractions, or full-time equivalents. See Instructions for definition of "Professional Instructional Staff".)

| | Col. 1 American Indian | Col. 2 Negro | Col. 3 Oriental | Col. 4 Spanish Surnamed American | Col. 5 All Individuals NOT Included in Cols. 1-4 | Col. 6 Totals |
|---|---|---|---|---|---|---|
| A. Sum of Classroom Teachers reported on Individual School Campus Report forms, Item XI.A. (Total FULL-TIME classroom teachers assigned to only one school campus) | 0 | 197 | 0 | 0 | 545 | 742 |
| B. Sum of FULL-TIME Professional Instructional Staff reported on Individual School Campus Report forms, Item XI.E. (Total FULL-TIME Professional Instructional Staff assigned to only one school campus) | 0 | 214 | 0 | 0 | 598 | 812 |
| C. Total FULL-TIME Professional Instructional Staff assigned to more than one school campus | 0 | 6 | 0 | 0 | 7 | 13 |

**IX. OPTIONAL ITEM: PART-TIME PROFESSIONAL INSTRUCTIONAL STAFF** (Working less than full-time in this school system)

| | | | | | | |
|---|---|---|---|---|---|---|
| | 0 | 0 | 0 | 0 | 0 | 0 |

To assure the submission of correct Title VI compliance data, please check the completeness and accuracy of each item reported. Errors or omissions may require a refiling of this form. Be sure there is an Individual School Campus Report for each school campus in this system.

**Certification:** I certify that the information given above is true and correct to the best of my knowledge and belief. (A willfully false statement is punishable by law [U.S. Code, Title 18, Section 1001].)

Signature of Person Furnishing Information
J.O. Lancaster
Title: Superintendent
(Area Code) Telephone Number: 318 323-1391
Date Signed: 10/6/70

Fall 1970

DUPLICATE—FORWARD TO OR KEEP AT DISTRICT OFFICE

Form OS/CR 101
OMB No.: 85 RO-109
Expiration Date: 8/31/72

PLAINTIFF
Exh. No. C-1
Case 1648

May a Rains

FALL 1971
ELEMENTARY AND SECONDARY SCHOOL CIVIL RIGHTS SURVEY
Required Under Title VI of the Civil Rights Act of 1964
U.S. Department of Health, Education, and Welfare
Office for Civil Rights ● Washington, D.C.

**SCHOOL SYSTEM SUMMARY REPORT**
Due October 15, 1971

I. Name of School System **Ouachita Parish**
II. Street Address **100 Bry Street**
III. City **Monroe**, County **Ouachita**
    State **Louisiana**, Zip Code **71201**
IV. Name of
    Chief Administrative Officer of School System **J. O. Lancaster, Jr. - Supt.**
V. Number of
   Individual School Campus Report Forms (OS/CR 102) Attached **31**

| | Col. 1 | Col. 2 | Col. 3 | Col. 4 | Col. 5 | Col. 6 |
|---|---|---|---|---|---|---|
| | American Indian | Negro | Oriental | Spanish Surnamed American | All Indi- viduals NOT Included in Cols. 1-4 | Totals |
| **VI. PUPIL MEMBERSHIP IN THIS SYSTEM** | | | | | | |
| A. Sum of pupils reported on INDIVIDUAL SCHOOL CAMPUS REPORT FORMS, Item VI (PUPILS IN MEMBERSHIP) | | 4405 | 16 | 0 | 13521 | 17942 |
| 1. Nonresident pupils in membership in this system | | | | | | N/A |
| 2. Resident pupils in membership in this system | | | | | | 17630 |
| **VII.** During the previous school year, how many pupils were officially expelled from any school in this system? (Estimate) | | 21 | | | 50 | 71 |
| **VIII. RESIDENT SCHOOL AGE CHILDREN NOT ENROLLED IN THIS SCHOOL SYSTEM** | | | | | | |
| A. Resident pupils enrolled in another public school system (estimate) | | 6,600 | | | 5,400 | 12000 |
| B. Resident pupils enrolled in non-public schools (estimate) | | 354 | | | 1,932 | 2286 |
| C. Resident school age children not in school (estimate) | | 170 | | | 470 | 640 |
| **IX. FULL-TIME PROFESSIONAL INSTRUCTIONAL STAFF** (Working FULL-TIME in this school system in an instructional capacity. Report the number, do not use percents, fractions, or full-time equivalents. See Instructions for definition of "Professional Instructional Staff".) | | | | | | |
| A. Sum of classroom teachers reported on INDIVIDUAL SCHOOL CAMPUS REPORT FORMS, Item IX A4 (Total full-time classroom teachers assigned to ONLY ONE SCHOOL CAMPUS) | | 199 | 0 | 0 | 567 | 746 |
| B. Sum of full-time professional instructional staff reported on INDIVIDUAL SCHOOL CAMPUS REPORT FORMS, Item IX E (Total full-time professional instructional staff assigned to ONLY ONE SCHOOL CAMPUS) | | 214 | 0 | 0 | 612 | 826 |
| C. Professional instructional staff assigned to MORE THAN ONE SCHOOL CAMPUS employed full-time in this school system. | | 7 | 0 | 0 | 8 | 15 |
| **X.** PART-TIME PROFESSIONAL INSTRUCTIONAL STAFF (Working less than full-time in this school system) | | 0 | 0 | 0 | 0 | 0 |

To assure the submission of correct Title VI compliance data, please check the completeness and accuracy of each item reported. Errors or omissions may require a refiling of this form. Be sure there is an Individual School Campus Report for each school campus in this system.

Certification: I certify that the information given above is true and correct to the best of my knowledge and belief. (A wilfully false statement is punishable by law. [U.S. Code, Title 18, Section 1001].)

**J. O. Lancaster**
Signature of Person Furnishing Information

**Superintendent**
Title

**318/323-1391**
(Area Code) Telephone Number

**10/11/71**
Date Signed

**DUPLICATE FORWARD TO OR KEEP AT SCHOOL DISTRICT OFFICE**

---

XI. **BILINGUAL INSTRUCTION**

A. Do any of the teachers in this school system teach any subject-matter (other than foreign language instruction) in a language other than English? (Example: Is science taught in Spanish?)   1 YES ☐   2 NO ☒

1. If yes, how many teachers offer such instruction? ___

2. How many pupils receive such instruction? ___

B. Are any instructional materials in any subject-matter (other than foreign language instruction) written, at least in part, in a language other than English? (Example: Are history texts in Navajo used?)   1 YES ☐   2 NO ☒

XII. **NEW SCHOOL CONSTRUCTION OR ACQUISITION OF SITES**

A.1. Between October 1, 1971 and September 30, 1972, do you expect to acquire any property upon which you can anticipate operating one or more schools in the future?   1 YES ☐   2 NO ☒

2. If yes give the number of sites to be acquired ___

B. Between October 1, 1971 and September 30, 1976, do you expect:
   1. a. To begin construction on any new school buildings?   1 YES ☒   2 NO ☐

   b. If yes, how many schools?   Unknown

2. a. To make any permanent additions or renovations which will increase the student capacity of any currently operating school building?   1 YES ☐   2 NO ☒

   b. If yes, how many school buildings? ___

*Griffin, J.*

OUACHITA PARISH SCHOOL BOARD.
100 Bry Street
Monroe, Louisiana 71201

Name *John D. Griffin*          School *West Monroe High*

Grade or Subject(s) *Geography (9-12)*      Years in Present Position *1*

PRELIMINARY STAFFING SURVEY FORM

       Each year at this time it is necessary to develop preliminary plans for the forthcoming school year. Before definite assignments are made, it is necessary to know the intent of the present staff. If you will please respond to the following, it will aid us in planning assignments for the 1970-1971 school year. Your cooperation in completing this survey will be greatly appreciated.

1. Check One:

    (X)  I expect to teach in Ouachita next year.
    ( )  I plan to request a leave of absence*
    ( )  I plan to resign.*
    ( )  I plan to retire.*

2. I want to return to this position for the school year 1970-71. X ___
                                                       Yes  No

    If NO, give preference for assignment next year:

           School                    Grade(s) or Subject(s)

    1st Choice_____      _____

    2nd Choice_____      _____

    Comments or reason for change:_____

    _____

    _____

3. Grade(s) or subjects certified._____

    _____

4. Grade(s) or subjects presently teaching_____

    _____

* Please attach a letter.